IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRCIT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SHAWN TALLANT<br><br>Plaintiff<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANSUNION, LLC, and ED MORSE AUTOMOTIVE LLC d/b/a FREEDOM CHEVROLET<br><br>Defendants | CASE NO.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

NOW COMES Plaintiff, Shawn Tallant (hereinafter the "Plaintiff"), by and through their Counsel of Record to make their allegations known against the Defendants through their complaint that alleges the following:

**PRELIMINARY STATEMENT**

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act).

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

1

4. All violations by the Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

5. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named in this Complaint.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

7. Venue in this District is appropriate under 28 U.S.C. §1391(b).

## PARTIES

8. Plaintiff is a natural person and a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

9. Defendant Experian Information Solutions, Inc (hereinafter "Experian"), is a For-Profit Corporation with a major processing center in the Eastern District of Texas. Experian is registered to do business in Texas and has a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties.

10. Defendant TransUnion, LLC (hereinafter "TransUnion"), is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties.

Based on information and belief, TransUnion is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

11. Defendant Ed Morse Automotive d/b/a Freedom Chevrolet (hereinafter "Freedom Chevrolet" or "Freedom") is a domestic for-profit company registered to do business in Texas. Defendant is a "furnisher" of information, as defined by 15 U.S.C. §1681s(a)&(b), who regularly and in the ordinary course of business furnishes credit information to Credit Reporting Agencies about consumer transactions. Defendant is actively conducting business in the State of Texas.

## FACTUAL ALLEGATIONS

12. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

13. Plaintiff is the victim of identity theft.

14. On or around June 26, 2024, Plaintiff received a notification from Credit Karma information Plaintiff that their credit was being pulled by Defendant Freedom Chevrolet in Dallas, Texas.

15. Although Plaintiff resides in the Dallas-Fort Worth metropolitan area, Plaintiff was neither applying for financing in person at Freedom Chevrolet nor car shopping at all on June 26, 2024.

16. Plaintiff has never been to or purchased a vehicle from Freedom Chevrolet.

17. After learning of their credit had been pulled by Freedom Chevrolet, Plaintiff called the dealership and asked why his credit was being pulled. In response, a Freedom representative informed Plaintiff that an individual was using Plaintiff as a cosigner to finance a vehicle.

18. When Plaintiff called Freedom about the hard inquiry, the individual was still physically present at the dealership attempting to secure the auto loan. Plaintiff instructed Freedom to call the police.

19. In using Plaintiff as their cosigner, the individual had provided Freedom with Plaintiff's personal identifying information (PII), including Plaintiff's name, social security number, date of birth, and street address.

20. Once the individual provided Freedom with Plaintiff's PII, Freedom promptly ran a hard credit pull of Plaintiff's credit files.

21. Freedom did not verify that the individual knew Plaintiff and did not contact Plaintiff for approval before pulling Plaintiff's credit.

22. Plaintiff does not know the individual who used their PII to apply for the auto loan.

23. Plaintiff had no knowledge that they were being used as a cosigner on the auto loan and did not authorize the transaction.

24. According to documents obtained by Plaintiff following the fraudulent auto loan application, the individual who fraudulently used Plaintiff as co-signer is Deshedrick Keiwayne Ward of Dallas, Texas.

25. On July 8, 2024, Plaintiff accessed their Experian, Equifax, and TransUnion credit reports and found that a hard inquiry related to the fraud was being reported by both Experian and TransUnion. The unauthorized hard inquiry was not being reported by Equifax.

26. Following the unauthorized hard inquiry's placement on Plaintiff's Experian and TransUnion credit reports, Plaintiff disputed the unauthorized hard inquiry through dispute packages mailed directly to Experian and TransUnion via USPS certified mail. Plaintiff's dispute packages each contained a detailed and thorough dispute letter signed by Plaintiff and dated July 16, 2024, a copy of Plaintiff's driver's license, and a screenshot of Plaintiff's utility bill for identification verification. The dispute packages also included documents related to the fraudulent

auto loan application, including the driver's license of the criminal who stole Plaintiff's identity and a copy of the fraudulent application itself.

27. Plaintiff's dispute packages were delivered to both Experian and TransUnion on July 22, 2024.

28. On September 4, 2024, more than thirty (30) days after its receipt of Plaintiff's dispute, Plaintiff accessed their Experian credit report and found that Experian had continued its inaccurate reporting of the unauthorized hard inquiry.

29. On September 4, 2024, more than thirty (30) days after its receipt of Plaintiff's dispute, Plaintiff accessed their TransUnion credit report and found that TransUnion had continued its inaccurate reporting of the unauthorized hard inquiry.

30. Following Plaintiff's dispute, the unauthorized inquiry continued reporting on Plaintiff's Experian credit report as follows:

    a. 700 CREDIT/FREEDOM CHEVR
       Inquired on 06/26/2024
       8008 Marvin D Love Fwy Dallas TX 75237
       Auto loan. This inquiry is scheduled to continue on record until Jul 2026.

31. Following Plaintiff's dispute, the unauthorized inquiry continued reporting on Plaintiff's TransUnion credit report as follows:

    a. FREEDOM CHEVROLET BU via 700CRFREEDOM CHEVROLET B
       Location: 8008 Marvin D Love Fwy, Dallas, TX 75237
       Requested On: 06/26/2024
       Permissible Purpose: Credit Transaction

**PLAINTIFF'S DAMAGES**

32. As a result of Defendants' violations of the FCRA, Plaintiff is entitled to actual, statutory, and punitive damages, along with their attorneys' fees and costs in this matter. Defendants'

conduct was such that Defendants acted willfully, intentionally, recklessly, and/or negligently in their actions related to Plaintiff.

33. The conduct of the Defendants was a direct and/or proximate cause, as well as a substantial factor in bringing about injuries, damages, and harm suffered by Plaintiff. Plaintiff continues to suffer as a result of Defendants' conduct. Plaintiff expects their damages to continue to accrue and be ongoing until they are made whole again if that ever occurs.

34. Defendants, due to their conduct, are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory, and punitive damages, as well as such other relief permitted by law. Plaintiff has suffered the following types of damages due to the conduct of Defendants:

    a. Emotional damages in the form of mental anguish, humiliation, and embarrassment. As a result of the identity theft, Plaintiff has suffered from stress, anxiety, and depression. Plaintiff's personal relationships, including the relationship with Plaintiff's significant other, have been affected by the constant stress Plaintiff has felt since the identity theft occurred. Plaintiff's mental anguish has caused them to act irritably and to quicken to anger during conversations about the identity theft, causing struggles in Plaintiff's relationship. The stress Plaintiff has experienced since the identity theft occurred has caused Plaintiff to miss out on holidays and family events. The constant worrying and anger regarding the identity theft has caused Plaintiff to self-isolate from their family events.

    b. Physical manifestations of mental anguish, humiliation, and embarrassment. Since the identity theft occurred, Plaintiff has struggled with the physical manifestations of their mental anguish on a daily basis. Plaintiff has suffered from tension headaches on a daily basis that require medication, severe

neck and back pain, insomnia, and disturbing dreams on the occasion that Plaintiff is able to sleep. The Plaintiff has also experienced nausea and weight loss as a result of the constant stress.

    c. Damages to Plaintiff's creditworthiness, credit reputation, and borrowing power. Plaintiff's creditworthiness and credit reputation have been negatively impacted by the identity theft and subsequent inaccurate credit reporting by Experian and TransUnion. The Plaintiff cares deeply about their credit and has worked diligently to increase their score over the years in order to purchase a home.

35. Plaintiff's damages caused by and through the conduct of Defendants are more specifically described as follows:

    d. Emotional damages in the form of mental anguish, humiliation, embarrassment, depression, anxiety, and relationship issues.

    e. Physical manifestations of stress and anxiety, including frequent headaches, neck and back pain, insomnia, and weight loss.

    f. Financial damages, including damage to Plaintiff's creditworthiness, credit reputation, and borrowing power.

    g. All other damages as described above.

36. Plaintiff's damages attributable to Defendants are serious, continuing, and ongoing.

37. Defendants' actions have led to Plaintiff's great detriment and loss and are caused by the conduct of Defendants described herein.

## CAUSES OF ACTION

38. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

39. This suit is based upon the Defendants' violations of the Fair Credit Reporting Act (FCRA). All causes of action were the producing causes of damages which Plaintiff has suffered.

## VIOLATIONS OF THE FAIR CREDIT REPORTNG ACT (FCRA)

40. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

41. The FCRA defines a "Consumer Reporting Agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

42. Defendants Experian and TransUnion are Consumer Reporting Agencies pursuant to the FCRA and will collectively be referred to as "the CRAs," or "the CRA Defendants."

43. The FCRA defines a "Person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

44. The Code of Federal Regulations defines a "Furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 CFR § 1022.41(c).

45. Defendant Freedom Chevrolet is a "Person" pursuant to the FCRA, and "Furnisher" pursuant to the Code of Federal Regulations (CFR) and will be referred to as "the Data Furnisher" or "the Data Furnisher Defendant."

46. The following conduct of the CRAs and the Data Furnisher was a direct and/or proximate cause, as well as a substantial factor in, and/or producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this Complaint. Plaintiff expects their damages caused by the CRAs and the Data Furnisher to continue to accrue and be ongoing until Plaintiff is made whole again.

47. The CRAs and the Data Furnisher, as defined above, acted in a manner that was willful, intentional, reckless, and/or negligent in their actions related to Plaintiff. As a result of these Defendants' violations of the FCRA, which are listed below, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

48. Plaintiff's damages attributable to the CRAs and the Data Furnisher are described in detail in paragraphs 33-38 above.

49. Plaintiff's damages attributable to the CRAs and the Data Furnisher are serious, continuing, and ongoing.

50. This suit is brought against the Defendants for violations of the FCRA which are the causes of Plaintiff's damages. In all instances of violating the FCRA, Defendants did so willfully, intentionally, recklessly, and/or negligently. Plaintiff is entitled to recover actual damages, punitive damages, and reasonable attorneys' fees under 15 U.S.C. §1681n and §1681o.

**COUNT I:**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(Defendants Experian and TransUnion)**

51. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

52. The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

53. The CRAs maintained fraudulent and inaccurate information about Plaintiff and prepared credit reports regarding Plaintiff containing fraudulent information.

54. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the CRAs readily stored, prepared, reported, and/or sold reports containing fraudulent and inaccurate information about Plaintiff, and in doing so, the CRAs suggested that Plaintiff was responsible for hard inquiry that was the product of identity theft.

55. The CRAs' conduct as to Plaintiff was such that a third party who viewed Plaintiff's credit reports could reasonably infer that the fraudulent and inaccurate information being reported by the CRAs was accurate, to Plaintiff's great detriment.

56. The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy in the preparation of credit files and/or reports they maintained and published about Plaintiff.

57. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have known that the information being reported about Plaintiff was fraudulent and inaccurate.

58. Plaintiff disputed the fraudulent unauthorized hard inquiry through dispute packages mailed directly to the CRAs via USPS certified mail. In these dispute packages, Plaintiff expressly informed the CRAs that Plaintiff was the victim of identity theft, and that the disputed hard inquiry did not belong to Plaintiff. Plaintiff instructed the CRAs not to rely on the Data Furnisher for

accurate information about their credit and to conduct an independent investigation into Plaintiff's dispute.

59. Had the CRAs established and/or followed reasonable procedures to assure maximum possible accuracy of their credit files and/or reports concerning Plaintiff, the CRAs would have deleted and/or blocked the reporting of the fraudulent information after being put on notice of the identity theft from Plaintiff's dispute package.

**COUNT II:**
**15 U.S.C. § 1681i(a)(1)(A)**
**Failure to Conduct a Reasonable Investigation into Plaintiff's Dispute**
**(Defendants Experian and TransUnion)**

60. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

61. The FCRA provides:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…. before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

62. Plaintiff disputed the fraudulent and unauthorized hard inquiry through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's police report, a copy of Plaintiff's FTC report, and a copy of Plaintiff's driver's license for identification verification.

63. Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent

and unauthorized hard inquiry had been placed on Plaintiff's credit reports as a result of identity theft.

64. After Plaintiff verified that their dispute packages had been delivered to the CRAs by USPS, Plaintiff waited more than thirty (30) days before viewing their credit reports following their disputes.

65. After pulling new credit reports, Plaintiff found that the disputed hard inquiry remained on their credit report following the CRAs' thirty (30) day period to process Plaintiff's dispute, in violation of 15 U.S.C. § 1681i(a)(1)(A).

66. Plaintiff provided the CRAs with ample information proving that the disputed hard inquiry was the product of identity theft. Had the CRAs conducted a reasonable investigation in accordance with the requirements imposed by the FCRA, they would have deleted the item from Plaintiff's credit file before the end of the thirty (30) day period.

## COUNT III:
## 15 U.S.C. § 1681i(a)(4)
### Failure to Read and Consider Documents Attached to Plaintiff's Dispute
### (Defendants Experian and TransUnion)

67. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

68. The FCRA provides that "[i]n conducting any reinvestigation under [15 U.S.C. § 1681i(a)(1)], with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the [30-day] period described in [15 U.S.C. § 1681i(a)(1)(A)] with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

69. Plaintiff disputed the fraudulent and unauthorized hard inquiry through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's dispute packages contained a

detailed and thorough dispute letter, a copy of Plaintiff's driver's license and utility bill for identification verification, and documents related to the fraudulent loan application, including a copy of the fraudulent loan application itself.

70. Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and unauthorized hard inquiry had been placed on Plaintiff's credit reports as a result of identity theft.

71. Plaintiff, through their dispute package, provided the CRAs with documents sufficient to prove that Plaintiff was the victim of identity theft, however, the CRAs failed to review and consider all relevant documents submitted by Plaintiff, in violation of 15 U.S.C. § 1681i(a)(4).

72. Had the CRAs acted in accordance with the investigation requirements imposed by the FCRA and reviewed and considered each document contained in Plaintiff's dispute package, it would have been easy for the CRAs to determine that Plaintiff was the victim of identity theft and delete and/or suppress the disputed information accordingly.

**COUNT IV:**
**15 U.S.C. § 1681i(a)(5)(A)**
**Failure to Delete and/or Modify the Disputed Information**
**(Defendants Experian and TransUnion)**

73. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

74. The FCRA provides that:

> (5) Treatment of Inaccurate or Unverifiable Information
>
> (A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

> (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
> (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

15 U.S.C. §1681i(a)(5)(A).

75. Plaintiff disputed the fraudulent and unauthorized hard inquiry through dispute packages mailed directly to the CRAs via USPS certified mail. Plaintiff's dispute packages contained a detailed and thorough dispute letter, a copy of Plaintiff's driver's license and utility bill for identification verification, and documents related to the fraudulent loan application, including a copy of the fraudulent loan application itself.

76. Plaintiff's dispute packages contained more than enough information for the CRAs to investigate and find that Plaintiff was, in fact, the victim of identity theft, and that the fraudulent and unauthorized hard inquiry had been placed on Plaintiff's credit reports as a result of identity theft, yet the CRAs failed to delete fraudulent and inaccurate information disputed by Plaintiff.

77. After pulling new credit reports following their dispute, Plaintiff found that the CRAs continued reporting the fraudulent and unauthorized hard inquiry disputed by Plaintiff, in violation of the FCRA.

78. The CRAs violated their duty under 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed information from Plaintiff's credit files and/or credit reports.

79. Had the CRAs conducted a reasonable investigation into Plaintiff's dispute as required by statute, they would have easily found that Plaintiff was the victim of identity theft and promptly deleted the disputed item from Plaintiff's credit files and/or credit reports in accordance with the

14

FCRA. Instead, the CRAs continued their inaccurate credit reporting about Plaintiff, to Plaintiff's great detriment.

## COUNT V:
## 15 U.S.C. § 1681s-2(b)
## Failure to Conduct a Reasonable Investigation of the Information Disputed by Plaintiff
## (Defendant Freedom Chevrolet)

80. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

81. The FCRA provides the following:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall –
>
> (A) Conduct an investigation with respect to the disputed information;
>
> (B) Review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) Report the results of the investigation to the consumer reporting agency;
>
> (D) If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>   (i) Modify that item of information;
>   (ii) Deleted that item of information; or
>   (iii) Permanently block the reporting of that information.

15 U.S.C. § 1681s-2(b).

82. Freedom furnished information about a fraudulent and unauthorized hard inquiry that was the product of identity theft to the CRAs.

83. Freedom caused fraudulent and inaccurate information to be added to Plaintiff's credit files with the CRAs.

84. On information and belief, notice of Plaintiff's dispute and attachments were transmitted to Freedom by both Experian and TransUnion during the dispute process. Therefore, Freedom was aware that the disputed unauthorized hard inquiry did not belong to Plaintiff and still verified the disputed information as accurate and instructed the CRAs to continue reporting the inaccurate information, to the great detriment of Plaintiff.

85. Freedom failed to conduct a reasonable, good faith investigation into Plaintiff's notice of dispute.

86. Had Freedom acted in accordance with their duties under 15 U.S.C. § 1681s-2(b), it would have recognized that the disputed information was the product of identity theft and instructed the CRAs to cease their reporting of the fraudulent and unauthorized hard inquiry. Instead, the Freedom verified disputed information as accurate and instructed the CRAs to continue their reporting of the fraudulent and unauthorized hard inquiry.

**COUNT VI:**
**15 U.S.C. § 1681b(f)**
**Acquiring and Viewing Plaintiff's Consumer Report without a Permissible Purpose**
**(Defendant Freedom Chevrolet)**

87. Plaintiff incorporates by reference the foregoing paragraphs and as though the same were set forth at length herein.

88. The FCRA provides the following:

> (f) Certain use or obtaining of information prohibited
>
> A person shall not use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

> (2) the purpose is certified in accordance with section 1681e of this title by a prospective use of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

89. Freedom acquired a viewed Plaintiff's Experian and TransUnion credit reports without a permissible purpose, causing an unauthorized hard inquiry to appear on Plaintiff's credit reports.

90. Plaintiff did not authorize Freedom to acquire and/or their credit reports and had no knowledge that the transaction was occurring until Plaintiff received an alert from Credit Karma.

91. Plaintiff did not apply for an auto loan with Freedom and did not consent to being listed as a cosigner on the transaction. Further, Plaintiff does not know the individual who stole their identity and listed them as a cosigner on the loan.

92. Because Plaintiff did not consent to being used as a cosigner on the fraudulent transaction, Freedom acquired and viewed Plaintiff's credit reports without a permissible purpose. In order for Freedom to have accessed Plaintiff's credit information with a permissible purpose, Plaintiff would have had to personally apply for the loan or otherwise consent to their PII being used to cosign the loan.

93. Freedom acted without Plaintiff's consent when it acquired and viewed Plaintiff's credit information from Experian and TransUnion without a permissible purpose, in violation of the FCRA, causing damage to Plaintiff's creditworthiness and credit reputation.

94. Had Freedom acted in accordance with its duties under 15 U.S.C. § 1681b(f), Freedom would not have acquired and/or viewed Plaintiff's credit reports without a permissible purpose. Instead, Freedom should have verified that it had a permissible purpose pursuant to the requirements set forth by the FCRA before acquiring and viewing Plaintiff's credit reports.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a trial by jury and a judgment in Plaintiff's favor against Defendants based on the following requested relief:

a. Actual and compensatory damages pursuant to 15 U.S.C. § 1681;

b. Statutory damages pursuant to 15 U.S.C. § 1681;

c. Punitive damages pursuant to 15 U.S.C. § 1681;

d. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o,

e. Such other and further relief as may be necessary, just and proper.

Dated: October 23, 2024

Respectfully Submitted,

*/s/Kyle Kaufman*
Kyle Kaufman
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 39232
Raburn Kaufman, LLC
8570 Anselmo Lane
Baton Rouge, Louisiana 70810
kkaufman@raburnkaufman.com
Telephone: 225-412-2777

*/s/Jonathan Raburn*
Jonathan Raburn
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 28728
Raburn Kaufman, LLC
8570 Anselmo Lane
Baton Rouge, Louisiana 70810
jraburn@raburnkaufman.com
Telephone: 225-412-2777